**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**UNITED STATES OF AMERICA**

-vs-  Case No. 3-:06-CR-003

**GEORGE ZAVAKOS**  Judge Thomas M. Rose

_____  _____

**ENTRY AND ORDER OVERRULING ZAVAKOS'S MOTION TO SUPPRESS (Doc. #10)**
_____

Defendant George Zavakos ("Zavakos") is charged with one count of transportation of child pornography in violation of 18 U.S.C. §2252(a)(1)and one count of possession of material constituting or containing child pornography in violation of 18 U.S.C. §2252(a)(4)(B) and (b)(2). These charges stem, at least in part, from the search of a residence located at 5712 Marblehead Drive in Dayton, Ohio, and the search of a residence at 5133 Rosemont Boulevard in Dayton, Ohio.

Now before the Court is Zavakos's Motion To Suppress any evidence seized as a result of the search of the residence at 5712 Marblehead Drive. (Doc. #10.) The residence at 5712 Marblehead Drive was searched using a warrant issued by Magistrate Judge Michael R. Merz on January 19, 2005. This Warrant was executed on January 24, 2005.

Based upon the search of the residence at 5712 Marblehead Drive and conversations there with Zavakos's mother, a warrant was obtained to search a residence at 1533 Rosemont Boulevard.  The second Warrant was issued by Magistrate Judge Michael R. Merz on January 24, 2005, and was executed on that same day.

The Court conducted a hearing on Zavakos's Motion To Suppress on March 30, 2006, at which the Government presented the testimony of one witness, FBI Special Agent Jeffrey L.

Coburn ("SA Coburn"). Zavakos then attempted to file what appears to be a Memorandum In Support of his Motion To Suppress. However, this document was deleted by the Clerk's office. Zavakos's Counsel was instructed to resubmit the document, but he did not do so. Subsequently, the Government filed its response in opposition to Zavakos's Motion To Suppress. (Doc. #14). The time has run and Zavakos has not filed a reply memorandum. Zavakos's Motion To Suppress is, therefore, ripe for decision. The law as it pertains to Zavakos's Motion To Suppress will first be set forth followed by an analysis of the Motion.

## THE RELEVANT LAW REGARDING MOTIONS TO SUPPRESS

The Fourth Amendment to the Constitution of the United States protects citizens from the unreasonable search of their property. The Fourth Amendment specifically provides that, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). In addition, the officer executing the search warrant must ensure that the search is lawfully authorized and lawfully conducted. *Id.* at 563. Finally, the defendant has the burden of proving that a search is unconstitutional. *United States v. Carter*, Case No. 91-1509, 1992 WL 102506 at *2 (6th Cir. Apr. 29, 1992).

### Probable Cause

Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Smith,* 182 F.3d 473, 477 (6th Cir. 1999)(citing *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). Probable cause exists "when there is a 'fair probability,' given the totality of the circumstances, that contraband or

evidence of a crime will be found in a particular place." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)(quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).

The Fourth Amendment requires only that the magistrate had a "substantial basis for… concluding" that a search warrant would uncover evidence of wrongdoing. *United States v. Allen,* 211 F.3d 970, 973 (6th Cir. 2000), *cert. denied*, 531 U.S. 907 (2000). Therefore, a magistrate's findings regarding probable cause should not be set aside unless arbitrarily exercised. *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996)(citing *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986), *cert. denied*, 479 U.S. 1092 (1987)).

### Affidavit Supporting Search Warrant

For a judge to be able to perform his or her official function regarding search warrants, the affidavit submitted as part of the request for the search warrant must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant. *Smith*, 182 F.3d at 477. Said another way, the affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause. *Helton*, 314 F.3d at 819 (quoting *Illinois v. Gates*, 462 U.S. 213 (1983)).

A court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation and if the supporting document accompanies the warrant. *Groh,* 540 U.S. at 557-58. Zavakos does not challenge the fact that the Applications and Affidavits in this case are incorporated into the Warrants.

When reviewing the sufficiency of a supporting affidavit, a "totality of the circumstances" approach is used. *Allen*, 211 F.3d at 972 (citing *Gates*, 462 U.S. 213). Also, the review is limited

to the "four corners" of the affidavit. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006), *cert. denied*, 2006 WL 1079063 (2006).

The affidavit is to be interpreted in a commonsense and realistic manner without placing technical requirements of elaborate specificity on it. *United States v. Hatfield*, 599 F.2d 759, 761 (6th Cir. 1979). Also, when reviewing the sufficiency of an affidavit, courts are to accord the judge's determination "great deference" and not engage in a de novo review. *Allen*, 211 F.3d at 972-73.

Finally, for probable cause considerations, "it is imperative that affidavits accurately reflect the facts of the particular situation at hand." *Weaver*, 99 F.3d at 1378. For example, statements by an affiant that are intentionally false or made with reckless disregard for the truth must be stricken before the probable cause consideration. *United States v. Cummins*, 912 F.2d 98, 100 (6th Cir. 1990).

### Staleness

In addition to the accuracy requirement, the affidavit must present facts regarding a presently existing situation. Since probable cause to search is concerned with facts relating to a presently existing situation, a problem arises when probable cause which once existed has grown stale. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999). Said another way, probable cause "cannot be based upon stale information that no longer suggests that the item sought will be found in the place to be searched." *United States v. Shomo*, 786 F.2d 981, 983 (10th Cir. 1986)(citing *United States v. Haimowitz*, 706 F.2d 1549, 1554-55 (11th Cir. 1983), *cert. denied*, 464 U.S. 1069 (1984)).

The standard of review for a determination of staleness is the same as the standard of review for determining the sufficiency of the affidavit. *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001). Further, whether information contained in a affidavit is stale is determined on a case-by-case basis. *Spikes,* 158 F.3d at 923.

The question of staleness depends upon the nature of the crime and is not measured solely by counting the days between the events listed in the affidavit and the application for the warrant. *Id.* As a result, a number of factors may be considered to determine if the information contained in an affidavit is too stale to support a finding of probable cause. The factors are: (1) the character of the crime (chance encounter or regenerating conspiracy); (2) the criminal (nomadic or entrenched); (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder); and (4) the place to be searched (criminal forum of convenience or secure operational base). *Greene*, 250 F.3d at 480-81. "As these variables demonstrate, even if a significant period has elapsed since a defendant's last reported criminal activity, it is still possible that, depending upon the nature of the crime, a magistrate may properly infer that evidence of wrongdoing is still to be found on the premises." *Spikes*, 157 F.3d at 923 (referring to *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991).

Evidence of ongoing criminal activity will generally defeat a claim of staleness. *Id.* at 481.

Further, "where the criminal activity occurred in a secure operational base, the passage of time becomes less significant." *Greene*, 250 F.3d at 480-81. (citing *Spikes*, 158 F.3d at 923). For example, in the case of drug dealers, evidence is likely to be found in the place where the dealers live. *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998), *cert. denied*, 126 S.Ct. 148 (2005). Also for example, images of pornography are "often stored on the user's hard drive for periods as

long as eight or nine months." *United States v. Roby*, 27 Fed.Appx. 779, 2001 WL 1381093 (9th Cir. Nov. 6, 2001). Finally, probable cause may be found where recent information corroborates otherwise stale information. *Spikes*, 158 F. 3d at 924.

## **The Good-Faith Rule**

The exclusionary rule which suppresses illegally obtained evidence does not apply where the evidence was discovered pursuant to a search warrant that was issued in good faith. *Helton*, 314 F.3d at 823. Accordingly, evidence should be suppressed based upon a lack of probable cause "only if the supporting affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Savoca*, 761 F.2d 292, 296 (6th Cir. 1985), *cert. denied*, 474 U.S. 852 (1985)(quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). This is termed the Good-Faith Rule and was first set forth in the case of *United States v. Leon*.

There are four exceptions to the Good-Faith Rule. They are: (1) where the supporting affidavit contains information the affiant knew or should have known is false; (2) where the issuing magistrate lacked neutrality and detachment; (3) where the affidavit is devoid of information that would support a probable cause determination making any belief that probable cause exists completely unreasonable; or (4) where the warrant is facially deficient. *Helton,* 314 F.3d at 824.

For example, an affidavit that states suspicions, beliefs or conclusions to justify issuance of a search warrant without providing underlying factual circumstances regarding veracity, reliability and basis of knowledge is not entitled to the good-faith exception because a reasonably prudent officer would have sought greater corroboration. *Weaver*, 99 F.3d at 1378. Another example is a

search warrant that contains sufficient recitation of facts so that it can be executed with an objectively reasonable good faith reliance on the probable cause determination is not invalid for being facially defective. *United States v. Smith*, 63 F.3d 766, 769 (8th Cir. 1995), *cert. denied*, 516 U.S. 1063 (1996). Having set forth the relevant law, Zavakos's Motion To Suppress is next analyzed.

## ANALYSIS

Zavakos argues that any and all evidence seized during the execution of the two search warrants should be suppressed. He specifically argues that the facts used to support issuance of both warrants were stale and the information provided in support of the second Warrant was not specific enough to support a probable cause finding. Zavakos also argues that, based upon the alleged illegality of the searches, any statements that he might have made should also be suppressed.

Both Warrants were issued pursuant to Applications and Affidavits for Search Warrants presented to Magistrate Judge Merz by SA Coburn. Attached to and in support of each of the Applications was an Affidavit by SA Coburn.

The Affidavit submitted by SA Coburn for the search of 5712 Marblehead Drive, the first search, sets forth, and the supporting testimony confirms, the following information: On December 22, 2004, the Northeast Ohio Internet Crimes Against Children (NOICAC) Task Force sent a letter to the Dayton office of the Federal Bureau of Investigation ("FBI"). (1/19/05 Aff. ¶4.) The letter advised the FBI that America Online ("AOL"), an Internet service provider, had provided a tip that child pornography had been e-mailed via AOL from an individual in the

Dayton area. (Id. ¶¶14, 17.) AOL reported that, on October 23, 2004, user Gzavakos@aol.com had e-mailed a file containing known child pornography. (Id. ¶¶16, 17.)

Pursuant to a subpoena, AOL revealed the subscriber information of "Gzavakos." (Id. ¶16.) The results of the subpoena were compared to public records which revealed that G. Nicholas Zavakos currently lived at 5712 Marblehead Drive. (Id. ¶¶17, 19.) Also revealed was that G. Nicholas Zavakos uses the screen name "gzavakos," among others. (Id.) On January 11, 2005, Task Force Officer Steven O. Maynard confirmed that Zavakos was receiving mail at 5712 Marblehead Drive. (Id. ¶20.)

The Affidavit describes the characteristics of individuals who buy, produce, trade or sell child pornography. (Id. ¶4.) These individuals collect child pornography in the form of photographs, magazines, motion pictures, videotapes, books and slides and they rarely, if ever, dispose of this material. (Id.) Also, these individuals often collect, read, copy or maintain names, addresses, phone numbers or lists of others who have similar interests regarding child pornography. (Id.)

The Affidavit further indicates that an individual interested in child pornography and familiar with a computer will use the computer in some private location to interact with other individuals to traffic in, trade or collect child pornography. (Id.) Also, a suspect may try to conceal child pornography in various ways on computer storage devices. (Id.)

The Affidavit presenting these facts to Magistrate Judge Merz is dated January 19, 2005. The first Warrant was issued on that same day and was executed on January 24, 2005.

The information provided to the Magistrate Judge to obtain the Warrant to search 1533 Rosemont Boulevard, the second search, was in the Affidavit of SA Coburn that was part of the

application for the second Warrant. The Affidavit that was part of the application for the second Warrant included all of the information that was in the Affidavit that was part of the application for the first Warrant plus additional information obtained as a result of the execution of the first Warrant.

As a result of executing the first Warrant, SA Coburn wanted to search the residence at 1533 Rosemont Boulevard. Following is a summary of the additional information contained in the Affidavit presented to obtain the Warrant to search 1533 Rosemont Boulevard, the second Warrant.  This second Affidavit indicates that the Warrant to search the 5712 Marblehead Drive residence was executed on January 24, 2005. (1/24/05 Aff. ¶19.) During this search, Linda Gray was present and stated that Zavakos is her son and that he uses her personal computer located at 5712 Marblehead Drive. (Id.) She also stated that Zavakos currently resides at 1533 Rosemont Boulevard and that he owns and uses a personal computer located at that address. (Id. ¶20.)

The Affidavit presenting these facts to Magistrate Judge Merz is dated January 24, 2005. The second Warrant was issued and executed on that same day.

**Staleness of First Search Warrant**

Zavakos argues that facts used to support the first Warrant to search the premises at 5712 Marblehead Drive were stale. Each of the factors used to determine if the information used in the Affidavit supporting issuance of the first Warrant was stale will next be addressed.

Character of the Crime

The key consideration regarding the character of the crime is whether it was a chance encounter or an ongoing activity. In this case, the character of the crime is child pornography. The Affidavit indicates that a computer file containing child pornography was emailed by a user

suspected to be Zavakos. The Affidavit also indicates that those who engage in child pornography collect it and rarely ever dispose of it. Therefore, there was reason to expect ongoing activity regarding child pornography.

### Criminal Nomadic or Entrenched

The key consideration regarding the criminal is whether he or she is moving about or can be expected to return to the same location. In this case, public records showed that Zavakos lived at 5712 Marblehead Drive and further investigation revealed that, as of a few days before the warrant was issued, Zavakos was receiving mail at 5712 Marblehead Drive. Therefore, there was reason to believe that Zavakos was not moving about and could be expected to return to 5712 Marblehead Drive.

### The Thing To Be Seized

Key considerations regarding the thing to be seized are whether it is perishable and easily transferable or of enduring utility to its holder. In this case, the things to be seized were computers and computer storage devices containing child pornography and allegedly used by Zavakos. A computer and information stored on a computer is generally of enduring utility to its holder. Also, the Affidavit indicates that, in cases where individuals trade in child pornography, they generally collect and store it and they, many times, use computers to do so. Therefore, Zavakos could reasonably have been collecting and storing child pornography on his computer and his computer could reasonably have enduring utility to him for purposes of collecting and/or trading child pornography.

### The Place To Be Searched

The key issue regarding the place to be searched is whether it is a mere criminal forum of convenience or a secure operational base. In this case, the place to be searched was the residence at 5712 Marblehead Drive. Public records indicated that Zavakos was known to reside there and he was receiving mail there. As a result, Zavakos could reasonably have been using 5712 Marblehead Drive as a secure operational base.

## Conclusion

Under the totality of the circumstances presented in the first Affidavit, the Magistrate Judge could reasonably conclude that the information in the first Affidavit was not stale. Even though the child pornography was e-mailed on October 23, 2004, and the first Warrant was not issued until January 19, 2005, the Affidavit indicates that criminal activity most probably occurred in a secure operational base, making the passage of time less significant. Also, the nature of the alleged crime is such that evidence of it could be expected to be stored for some period of time at the secure operational base.

## **Probable Cause for Second Search Warrant**

Zavakos argues that the information provided to search 1533 Rosemont Boulevard was not specific enough to support a probable cause finding. The information provided to the Magistrate Judge was that Zavakos had transmitted known child pornography in an e-mail, that the public records indicated that Zavakos resided at 5712 Marblehead Drive, that Zavakos was receiving personal mail at 5712 Marblehead Drive, that 5712 Marblehead Drive had been searched, that Zavakos's mother had informed the agents that Zavakos may have used her computer at 5712 Marblehead Drive, that Zavakos now resided at 1533 Rosemont Boulevard and that Zavakos owns and uses a personal computer located at that address.

Zavakos does not challenge any of the specific facts presented in the second Affidavit. Given the totality of the circumstances presented in the second Affidavit, including detail provided about child pornographers and the use of computers, the Magistrate Judge had a substantial basis for concluding that there was probable cause to search the residence at 1533 Rosemont Boulevard.

## Staleness of Second Search Warrant

Zavakos argues that the facts used to support the second Warrant to search the premises at 1533 Rosemont Boulevard were stale. Therefore, each of the factors used to determine if the information used in the affidavit supporting issuance of the second Warrant was stale will next be addressed.

### Character of the Crime

As with the first Affidavit to obtain the warrant to search 5712 Marblehead Drive, the character of the crime in the second Affidavit to search 1533 Rosemont Boulevard is child pornography. The second Affidavit indicates that a computer file containing child pornography was e-mailed by a user suspected to be Zavakos. The second Affidavit also indicates that those who engage in child pornography collect it and rarely ever dispose of it. Finally, the second Affidavit indicates that Zavakos now resides at 1533 Rosemont Boulevard. Therefore, there was reason to expect ongoing activity regarding child pornography at Rosemont Boulevard.

### Criminal Nomadic or Entrenched

The second Affidavit indicates that Zavakos's mother said that he now resides at 1533 Rosemont Boulevard and this statement was made on the same day that the second Warrant was

issued. Therefore, there was reason to believe that Zavakos was not moving about and could be expected to return to 1533 Marblehead Drive.

### The Thing To Be Seized

As with the first Affidavit, the second Affidavit indicates that the things to be seized were computers and computer storage devices containing child pornography and used by Zavakos. A computer and information stored on a computer is generally of enduring utility to its holder. Also, the second Affidavit indicates that, in cases where individuals trade in child pornography, they generally collect and store it and they, many times, use computers to do so. Finally, Zavakos's mother indicated that he owned and used a personal computer located at 1533 Rosemont Boulevard. Therefore, Zavakos could reasonably have been collecting and storing child pornography on his computer at 1533 Rosemont Boulevard and his computer could reasonably have enduring utility to him for purposes of collecting and/or trading child pornography.

### The Place To Be Searched

In the case of the second Warrant, the place to be searched was 1533 Rosemont Boulevard. This was the location where Zavakos's mother said he was residing and where he owned and used a personal computer. As a result, Zavakos could reasonably have been using 1533 Rosemont Boulevard as a secure operational base.

### Conclusion

Under the totality of the circumstances, the Magistrate Judge could reasonably conclude that the information in the second Affidavit presented to obtain the second Warrant was not stale.

Even though the alleged child pornography was e-mailed on October 23, 2004, and the second Warrant was not issued until January 24, 2005, the second Affidavit indicates that criminal activity most probably occurred in a secure operational base, making the passage of time less significant. Also, the nature of the alleged crime is that evidence of it could be expected to be stored at the secure operational base at 1533 Rosemont Boulevard.

## SUMMARY

The information contained in the Affidavit presented to obtain the first Warrant was not stale. Also, the information contained in the Affidavit presented to obtain the second Warrant was not stale and the Magistrate Judge had probable cause to issue the second Warrant. Therefore, the first Branch of Zavakos's Motion To Suppress is OVERRULED.

SA Coburn testified that no statements were given by Zavakos at the time of the searches. Therefore, the second, and final, Branch of Zavakos's Motion To Suppress is not well founded and is also OVERRULED.

Finally, the Government argues that, even if either or both of the Warrants were somehow deficient, it is entitled to the good-faith exception. However, since neither of the Warrants was defective, the Court need not address this argument.

**DONE** and **ORDERED** in Dayton, Ohio on this Nineteenth day of June, 2006.

                                        s/Thomas M. Rose

                                _____
                                        THOMAS M. ROSE
                                        UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney

United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
George Zavakos